**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 23-CR-194-RAW** |
| **STEVEN DEWAYNE BEARD,** | |
| **Defendant.** | |

## OPINION AND ORDER

Before the Court is the United States of America's ("Government") Second Opposed Notice and Motion to Introduce Evidence Under Federal Rule of Evidence 404(b). (Docket No. 68). In its motion, the Government lists 25 items of evidence labeled (a) through (y) that it claims is: (1) intrinsic evidence, and thus not controlled by Rule 404(b); (2) extrinsic evidence, but should be admitted pursuant to Rule 404(b) because it shows Defendant's motive, intent, knowledge, plan, absence of mistake, and lack of accident; (3) an admission; (4) evidence of consciousness of guilt; and/or (5) rebuttal evidence. *See Id.* at 11-21. Defendant has filed a response in opposition to the Government's motion. (Docket No. 69). For the reasons set forth below, the Government's motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

In June 2024, Defendant was indicted for: (1) Murder in Indian Country; (2) Use, Carry, Brandish and Discharge of a Firearm During and in Relation to a Crime of Violence; and (3) Causing the Death of a Person in the Course of a Violation of Title 18, United States Code, Section 924(c). (Docket No. 2). In August 2024, a superseding indictment charged Defendant with the same counts as above. (Docket No. 71). This case is set on the Court's September 9, 2024, jury trial docket. (Docket. No. 78).

The Government contends these charges stem from a "love" triangle involving two approximately 50-year-old men, Defendant and victim M.I., and a woman in her 20s, A.M. M.I. and A.M. had been seeing each other for a number of years. Defendant and M.I. were once friends, but their relationship became acrimonious when A.M. also began seeing Defendant.

On the day of the homicide, Defendant and A.M. spent part of the afternoon at Defendant's trailer, which had an extensive security camera system. After dark, Defendant drove A.M. to a friend's home a few minutes away to visit her cat. The cat's cage and some of A.M.'s personal items remained in Defendant's trailer.

Upon arriving at the friend's home, Defendant saw M.I. parked outside. A.M. later indicated that she was leaving with M.I., which upset Defendant. Defendant instructed A.M. to retrieve her belongings from his trailer and stated he was going to one of A.M.'s family member's homes. Instead, however, Defendant returned to his trailer and went inside.

Several minutes later, A.M. and M.I. drove to Defendant's trailer, parked at a nearby home, and walked to the trailer. A.M. attempted to open the trailer door to retrieve her items, but the door was locked. Thereafter, both A.M. and M.I. attempted to forcibly open the trailer door. Defendant then opened the door and fired a 20-gauge single shot shotgun at M.I., who fell down a ramp and onto the ground. A.M. immediately ran to render aid to M.I. Defendant then reloaded the shotgun, advanced down the ramp, forcibly moved A.M. with the barrel of the shotgun, and fired another shot into M.I.'s chest. Defendant then yelled something akin to "I told you (or the) motherf***er, I told you (or him)." M.I. died from his injuries. Defendant's actions in killing M.I. were captured on Defendant's surveillance system.

The Government contends that Defendant "successfully sprung his trap and eliminated his romantic rival." (Docket No. 68 at 3). Defendant contends he acted in self-defense when M.I. was

breaking into his residence because he had a reasonable belief that he was in imminent danger of death or great bodily harm. (Docket No. 96 at 2).

A hearing was held on August 23, 2024, wherein the parties presented their theories for admission or exclusion of the twenty-five (25) separate instances of conduct the Government seeks to admit. The Court will address each of the Government's arguments as to Federal Rule of Evidence 404(b) and attendant theories of admissibility in turn, below.[1]

## ARGUMENT AND AUTHORITY

### A.   Intrinsic Versus Extrinsic Evidence

The Tenth Circuit has explained, "[w]hen we apply Rule 404(b), we distinguish between evidence that is extrinsic or intrinsic to the charged crime." *United States v. Kupfer*, 797 F.3d 1233, 1238 (10th Cir. 2015) (citing *United States v. Pace*, 981 F.2d 1123, 1135 (10th Cir. 1992), *abrogated on other grounds as recognized in United States v. Bell*, 154 F.3d 1205, 1209-10 (10th Cir. 1998)). "Evidence of other acts may be inadmissible under Federal Rule of Evidence 404(b), but this rule does not cover evidence that is considered 'intrinsic.'" *Id.* (citing *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011)). Evidence is considered "intrinsic" when it is "directly connected to the factual circumstances of the crime and provides contextual or background information to the jury[.]" *Id.* (quoting *United States v. Parker,* 553 F.3d 1309, 1314 (10th Cir. 2009)). The Tenth Circuit considers evidence intrinsic when it is inextricably intertwined with the charged conduct or the evidence is entirely germane background information, directly connected to the factual circumstances of the crime. *Id.* (internal citations and quotations omitted).

---

[1] At the hearing on this matter on August 23, 2024, Defendant's counsel pointed out that the some of the proffered evidence was potentially hearsay evidence. Additionally, they challenged the foundation of some of the evidence and questioned the Government's ability to lay the foundation prior to admission. The Court's ruling on admissibility does not alleviate any party of from laying a proper foundation prior to admission. All evidence at trial must comply with the other Federal Rules of Evidence prior to admissibility.

Intrinsic evidence "should be approached with caution." *United States v. Collins*, 97 Fed. App'x 818, 824 n.7 (10th Cir. 2004) (unpublished).

Evidence is considered "extrinsic" when it "is extraneous and is not connected or blended with the factual circumstances of the charged offense." *Kupfer*, 797 F.3d at 1238 (quoting *Parker*, 553 F.3d at 1314). If the Court determines the evidence at issue is extrinsic, it must conduct a Rule 404(b) analysis. *Id.*

### B.      Federal Rule of Evidence 404(b)

Rule 404(b) provides, in pertinent part:

> Evidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> …
> This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b).  In weighing the admissibility of evidence under Rule 404(b), the Court must consider four factors: (1) whether the evidence is offered for a proper purpose; (2) its relevancy; (3) whether the probative value of the evidence is substantially outweighed by the prejudicial effect; and (4) the court must give a limiting instruction if the defendant so requests. *Huddleston v. United States*, 485 U.S. 681, 691 (1988); *United States v. Mares*, 441 F.3d 1152, 1156 (10th Cir. 2006); *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000).

Regarding the first factor, Rule 404(b) requires the Government to "articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose." Fed. R. Evid. 404(b)(3)(B). In other words, the Government must specifically state for what purpose the evidence is offered—to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident—and it must demonstrate how the evidence supports that particular purpose. *Id*. In the context of Rule 404(b)

4

relevance, an extrinsic act's similarity to the charged offense is the linchpin of the analysis. *United States v. Tennison,* 13 F.4th 1049, 1056 (10th Cir. 2021).

### C.     Federal Rule of Evidence 403

Evidence that is relevant and offered for a proper purpose under Rule 404(b) must still survive a balancing test under Fed. R. Evid. 403 to be admitted. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Under Rule 403, the Court must weigh the proffered evidence's probative value against its potential for unfair prejudice. *See United States v. Record,* 873 F.2d 1363, 1375 (10th Cir. 1989). "In performing the [Rule] 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Deters v. Equifax Credit Info. Servs., Inc.,* 202 F.3d 1262, 1274 (10th Cir. 2000). The decision to admit or exclude evidence pursuant to Rule 403 is within the Court's discretion. *See United States v. Lugo*, 170 F.3d 996, 1005 (10th Cir. 1999).

Evidence may be unfairly prejudicial if it would likely provoke an emotional response from the jury or would otherwise tend to adversely affect the jury's attitude toward a particular matter. *See United States v. Rodriguez*, 192 F.3d 946, 951 (10th Cir. 1999). "Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case." *United States v. Caraway,* 534 F.3d 1290, 1301 (10th Cir.2008) (quoting *United States v. Curtis,* 344 F.3d 1057, 1067 (10th Cir. 2003)). Rather, "[t]o be *unfairly* prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Id.* at 1301 (quoting Fed. R. Evid. 403 advisory committee note)(emphasis in original). "The term unfair prejudice, as to a criminal defendant, speaks to the capacity of some concededly relevant evidence

5

to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (internal quotation marks and citation omitted). "Such improper grounds certainly include . . . generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged." *Id.* at 180-81.

Even if the Court finds that the evidence is admissible for a purpose other than Rule 404(b), such as an admission or intrinsic evidence, Rule 403 can still be applied to determine such evidence's probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

## ANALYSIS

Using the labels from the Government's motion, the Court now turns to each piece of evidence it seeks to admit.

(a) 2021: Defendant was convicted of misdemeanor domestic assault and battery in Lincoln County, Oklahoma. (Docket No. 68 at 12)

(b) Defendant maced or pepper-sprayed neighbor and witness K.W.'s dog. *Id.* at 13.

(c) Defendant shot neighbor K.N.'s dog with a pellet gun after complaining that the dog was bothering Defendant's dog. *Id.*

The Government contends that this evidence may be admissible during cross-examination, redirect, or in rebuttal, for example, if Defendant elicits testimony that he was peaceful. *Id.* at 12-13. However, at the motion hearing on August 23, 2024, Defendant's counsel stated that they will not present any such evidence. Based on such representations and because the Government articulates

no other basis for admitting this evidence, the Government's motion seeking admission of (a), (b), and (c) is DENIED.

(d) Defendant tried to physically drag A.M. back into his yard when she tried to leave.

(Docket No. 68 at 13).

The Government argues that this evidence is intrinsic to the rivalry between Defendant and M.I. as well as the relationship between Defendant and A.M. *Id.* The Government also asserts that this evidence is admissible under Rule 404(b) because it shows Defendant was preoccupied with A.M. and was acting with jealousy and hatred when he killed M.I. *Id.* Lastly, the Government argues this evidence may be admissible during cross-examination, redirect, or in rebuttal, for example, if Defendant elicits testimony that he was peaceful, attacks M.I.'s reputation, or elicits specific instances of conduct by M.I. for the purpose of showing that Defendant was fearful of M.I.[2] *Id.* In its Notice, the Government offered no time frame for this event, other than to generally state that the events are presented chronologically. However, at the motion hearing on August 23, 2024, the Government did indicate this event took place approximately between January 2023 and March 2023. Nonetheless, the Court is unable to determine from the notice or argument presented at the hearing the context of this evidence. The Government has a video of the incident that it did not admit at the hearing which may have shed some light on this incident. Based on the 404(b) Notice and the lack of evidence, the Court simply cannot conduct an adequate analysis. Accordingly, the Government's motion seeking admission of (d) is DENIED.

---

[2] Apart from defense counsel's assertion that they will not present evidence that Defendant was a peaceful person, it remains to be seen if the conditions precedent to admission for cross-examination, redirect, or in rebuttal, which the government fails to identify in its motion have been met. Therefore, the Court conditionally finds these issues are not yet ripe. Defendant can bring forward his cross-examination, redirect, or rebuttal evidence when and if the appropriate time presents itself.

(e) Approximately January 2023: M.I. was at a neighbor's home near Defendant's trailer. A.M. got into M.I.'s truck. Defendant was upset that she was leaving with M.I. and followed them in his truck. A.M. got out to tell Defendant to turn back and Defendant tried to run her over with his truck. (Docket No. 68 at 13).

The Government contends this is intrinsic evidence about the rivalry between Defendant and M.I. and shows the relationship between the parties. *Id.* Even if extrinsic, the Government asserts this evidence is admissible under Rule 404(b) to show that Defendant was preoccupied with A.M. and was acting with jealousy and hatred when he killed M.I. *Id.* Specifically, because the evidence shows Defendant's motive, intent, plan, knowledge, absence of mistake, and lack of accident in killing M.I. so he could eliminate his rival. *Id.* at 13-14. Lastly, the Government argues this evidence may also be admissible during cross-examination, redirect, or in rebuttal, for example, if Defendant elicits testimony that he was peaceful, attacks M.I.'s reputation, or elicits specific instances of conduct by M.I. for the purpose of showing that Defendant was fearful of M.I. *Id.* at 14.

The Court finds this evidence is intrinsic. It shows Defendant's preoccupation and relationship with A.M., as well as Defendant's anger when A.M. and M.I. are together. Thus, this evidence clearly sets out the relationship between the parties. Furthermore, it is also admissible under Rule 404(b). It is offered to show a proper purpose, in that it shows Defendant following A.M. and M.I., which could lead a reasonable trier of fact to conclude Defendant was obsessed with that relationship, thereby providing motive, which is patently relevant to Defendant's actions herein. Additionally, the probative value of the evidence is not substantially outweighed by the prejudicial effect. Evidence that Defendant followed A.M. and M.I. and subsequently tried to run A.M. over with his truck is not likely provoke an emotional response from the jury or otherwise

tend to adversely affect the jury's attitude toward a particular matter. Finally, the court can give a limiting instruction if Defendant so requests. Accordingly, the Government's motion seeking admission of (e) is GRANTED.

> (f) T.O. saw Defendant following M.I. and A.M. in Defendant's truck. (Docket No. 68 at 14).

The Government provides no time frame whatsoever for this evidence, and even states this may have been a different occasion, apparently referring to the preceding evidence (e). *Id*. This is speculative and without more context it is not sufficiently presented. Based on the 404(b) Notice and the lack of evidence, the Court simply cannot conduct an adequate analysis. Accordingly, the Government's motion seeking admission of (f) is DENIED.

> (g) According to T.M., Defendant would tell A.M. to have M.I. pick her up at Defendant's home so Defendant could "whip" his "a**." *Id*.

> (h) According to T.M., Defendant once heard M.I.'s motorcycle and said he could shoot out M.I.'s tire with a pellet gun while he was driving on the highway. *Id.* at 15.

The Government states this is intrinsic evidence about the rivalry between Defendant and M.I. and shows the relationship between the parties. *Id.* at 14-15. Even if extrinsic, the Government asserts this is admissible under Rule 404(b) to show Defendant's feelings toward M.I., to show that Defendant was acting with jealousy and hatred when he killed M.I., and to show Defendant's motive, intent, plan, knowledge, absence of mistake, and lack of accident in killing M.I. so he could eliminate his rival. *Id.* Lastly, the Government argues this evidence may also be admissible during cross-examination, redirect, or in rebuttal, for example, if Defendant elicits testimony that he was peaceful, attacks M.I.'s reputation, or elicits specific instances of conduct by M.I. for the purpose of showing that Defendant was fearful of M.I. *Id.*

The Court finds this evidence is intrinsic. It shows Defendant's animus towards M.I., that Defendant wanted to harm M.I., and that Defendant was not afraid of M.I. Thus, this evidence clearly sets out the relationship between the parties. Furthermore, it is also admissible under Rule 404(b). It is offered to show a proper purpose, in that it shows Defendant's disdain for M.I. and willingness to harm M.I., which could lead a reasonable trier of fact to conclude Defendant did not like M.I. and wanted to eliminate him as a romantic rival, thereby providing motive, which is patently relevant to Defendant's actions herein. Additionally, the probative value of the evidence is not substantially outweighed by the prejudicial effect. Evidence that Defendant did not like M.I. and wanted to harm him is not likely to provoke an emotional response from the jury or otherwise tend to adversely affect the jury's attitude toward a particular matter.  Finally, the Court can give a limiting instruction if Defendant so requests. Accordingly, the Government's motion seeking admission of (g) and (h) is GRANTED.

> (i)   Approximately February 2023: A.M. was leaving a neighbor's home when Defendant came after her with a weapon. M.I. came out of the bushes and began fighting with Defendant. M.I. struck Defendant with brass knuckles and Defendant dropped the weapon. (Docket No. 68 at 15).

At the motion hearing on August 23, 2024, Defendant's counsel indicated they did not object to the admission of this evidence. Therefore, the Government's motion seeking admission of (i) is GRANTED.

> (j)   Approximately April or May 2023: Defendant told A.M. that he wished he would have blown off her head (when he killed M.I.). He attempted to drag her down the road by her hair. Defendant had an axe in his hand and threatened to cut off her head. She was

able to get away from Defendant and ran as fast as she could. (Docket No. 68 at 15-16).

The Government asserts five bases for admitting this evidence: (1) as an admission by a party-opponent under Fed. R. Evid. 801; (2) as consciousness of guilt/witness intimidation evidence; (3) as intrinsic evidence that shows the relationship between Defendant and A.M.; (4) if extrinsic, under Rule 404(b) to show that Defendant was acting with jealousy and hatred when he killed M.I., given his statement, and to show his motive, intent, plan, knowledge, absence of mistake, and lack of accident in killing M.I.; and (5) during cross-examination, redirect, or in rebuttal, for example, if Defendant elicits testimony that he was peaceful, attacks M.I.'s reputation, or elicits testimony about specific instances of conduct by M.I. for the purpose of showing that Defendant was fearful of M.I. *Id.* at 16.

While this evidence may very well be an admission by Defendant, consciousness of guilt, witness intimidation, intrinsic to the crimes charged, and/or may satisfy the first two prongs of the 404(b) analysis, its prejudicial effect is tremendous. The Government does not seek to parse out Defendant's statement that he wished he would have blown A.M.'s head off when he killed M.I. from the acts of dragging A.M. down the road by her hair and threatening to cut off her head. In as much as the statement is coupled with the acts, the Court finds that the probative value is substantially outweighed by the danger of unfair prejudice. This evidence would most certainly paint Defendant as a violent, domestic abuser and the potential for a visceral reaction by the jury is too great to ignore. Accordingly, the Government's request to admit (j) is DENIED.

(k) According to witness and neighbor T.M.: Approximately two months after the shooting, A.M. said Defendant had tried to slit her throat. *Id*.

11

The Government asserts three bases for admitting this evidence: (1) as consciousness of guilt/witness intimidation evidence; (2) as intrinsic evidence that shows the relationship between Defendant and A.M.; and (3) during cross-examination, redirect, or in rebuttal, for example, if Defendant elicits testimony that he was peaceful, attacks M.I.'s reputation, or elicits testimony about specific instances of conduct by M.I. for the purpose of showing that Defendant was fearful of M.I., or depending upon Defendant's examination of T.M. and A.M. *Id.*

As an initial matter, the Court notes this evidence appears to be hearsay evidence. Nonetheless, although this evidence may be consciousness of guilt/witness intimidation evidence and/or intrinsic to the crimes charged, its prejudicial effect is tremendous and substantial. Thus, the Court finds that this evidence's probative value is substantially outweighed by the danger of unfair prejudice. Like (j) above, this evidence would most certainly paint Defendant as a violent, domestic abuser and the potential for a visceral reaction by the jury is too great to ignore. Moreover, because this evidence took place after the shooting, it would serve to confuse the issues for the jury. Accordingly, the Government's request to admit (k) is DENIED.

(l) July 2023: Neighbor T.O. (T.M.'s significant other who spent time with Defendant and A.M. during the afternoon of the day of the homicide) failed to pay the rent and the landlord brought Defendant with him when the landlord came to turn off the water. Defendant sprayed T.O. with wasp spray. (Docket No. 68 at 16).

The Government asserts two bases for admitting this evidence: (1) as consciousness of guilt/witness intimidation evidence; and (2) during cross-examination, redirect, or in rebuttal, for example, if Defendant elicits testimony that he was peaceful or depending upon Defendant's examination of T.M. *Id.*

In its motion, the Government itself suggests that a rent dispute, rather than witness intimidation, may be the reason Defendant resorted to spraying T.O. with wasp spray. *Id.* Offering this evidence would serve to confuse the issues. Therefore, its probative value is substantially outweighed by the danger of confusing the issues. The Government's request for admission of (l) is DENIED.

(m) August 2023: Defendant shot at T.M.'s car with a slingshot and T.M. got a protective order against Defendant. (Docket No. 68 at 17).

The Government asserts two bases for admitting this evidence: (1) as consciousness of guilt/witness intimidation evidence; and (2) during cross-examination, redirect, or in rebuttal, for example, if Defendant elicits testimony that he was peaceful or depending upon Defendant's examination of T.M. *Id.*

While this evidence potentially shows consciousness of guilt/witness intimidation, the Court finds that the probative value is substantially outweighed by the danger of unfair prejudice. This is apparently uncharged criminal conduct. While the interactions between a witness and the defendant are probative, here the evidence would cause the jury to focus on issues that detract from Defendant's guilt or innocence, and thus confuse the issues. Accordingly, the Government's request for admission of (m) is DENIED.

(n) September 2023: Defendant placed a container with "legs" hanging out at the end of his driveway, resembling a dead person, to intimidate neighbor and witness K.W. *Id.*

The Government asserts two bases for admitting this evidence: (1) as consciousness of guilt/witness intimidation evidence; and (2) during cross-examination, redirect, or in rebuttal, for example, if Defendant elicits testimony that he was peaceful or depending upon Defendant's examination of K.W. *Id.*

13

Given that this event occurred in September 2023 and near Halloween, the evidence is speculative at best and lacks probative value. Therefore, the Government's request for admission of (n) is DENIED.

(o) Fall 2023: As K.W.'s brother was leaving K.W.'s home, he saw Defendant sitting at the end of Defendant's driveway. Defendant said, "that place is about to light up" and possibly "that b*t*h has been lying about me." (Docket No. 68 at 17).

The Government asserts two bases for admitting this evidence: (1) as consciousness of guilt/witness intimidation evidence; and (2) during cross-examination, redirect, or in rebuttal, for example, if Defendant elicits testimony that he was peaceful or depending upon Defendant's examination of K.W. *Id.*

Like (n) above, this evidence is speculative at best.  There is no context as to which place or what witness Defendant was referring to when he "possibly" made these statements. The Government has repeatedly asserted Defendant has engaged in witness intimidation yet has never charged Defendant with such conduct. When pressed at the motion hearing as to why Defendant has not been charged with witness intimidation, the Government responded that it was not required to charge Defendant with witness intimidation in order to admit evidence of witness intimidation. Even assuming *arguendo* this evidence is offered for an appropriate purpose, the Court finds its probative value is substantially outweighed by the danger of unfair prejudice. This evidence is highly likely to confuse the issues for the jury or mislead them. The Government's request for admission of (o) is DENIED.

(p) Defendant burned A.M.'s neck with a torch. According to T.M., A.M. had marks on her chin and the front of her neck. *Id.*

The Government asserts three bases for admitting this evidence: (1) as consciousness of guilt/witness intimidation evidence; (2) as intrinsic evidence that shows the relationship between Defendant and A.M.; and (3) during cross-examination, redirect, or in rebuttal, for example, if Defendant elicits testimony that he was peaceful, attacks M.I.'s reputation, elicits testimony about specific instances of conduct by M.I. for the purpose of showing that Defendant was fearful of M.I., or depending upon Defendant's examination of A.M.'s chin and neck. (Docket No. 68 at 18).

As an initial matter, the Court notes the Government does not make clear whether A.M. herself will testify as to this incident or whether T.M. will merely testify that T.M saw marks on A.M. When the Court inquired about this issue at the motion hearing on August 23, 2024, the Government was evasive, but ultimately stated it "believed" A.M. would testify as to this incident. Because the Government does not indicate when this incident occurred, the Court does not know if it took place before or after March 29, 2023. This makes it impossible to determine if the evidence is evidence of guilt/witness intimidation. Although the nature of the relationship between the defendant and A.M. is potentially intrinsic, the Court finds that the probative value is substantially outweighed by the danger of unfair prejudice. Here, once again, this uncharged criminal conduct would most certainly paint Defendant as a violent, domestic abuser and anything less than a visceral reaction from the jury for conduct ancillary to M.I.'s death cannot be avoided. This evidence will confuse the issues for the jury and will most certainly present an emotional reaction. The Government's request to admit (p) is DENIED.

(q) October 6, 2023: Defendant had sold a vehicle he did not own to J.B.. When J.B. refused to pay additional money, Defendant said that he kills people and would be back to get J.B. or the vehicle. Defendant also said that he would shoot to get the truck back and something like "I'll just f**king kill you and take it, like I did the guy on the hill."

Defendant said, "I'll kill you motherf**ker; you know who I am?" Defendant made the shape of a gun with his hand, pointed it to his head, and pulled an imaginary trigger. (Docket No. 68 at 18).

The Government argues that this evidence is admissible as an admission by a party-opponent under Fed. R. Evid. 801 and as consciousness of guilt evidence. *Id.* Additionally, the government asserts this evidence may be admissible during cross-examination, redirect, or in rebuttal, for example, if Defendant elicits testimony that he is peaceful. *Id.*

At the motion hearing on August 23, 2024, the Government suggested that this evidence is an admission of guilt by the Defendant because he omitted the words "self-defense" when making the above statement. This omission, the Government concludes, is evidence that Defendant was not acting in self-defense.

As it did with (j) above, the Government seeks to admit what appears to be yet another of Defendant's criminal acts but does not seek to separate such act from the admission of guilt. Rather, it appears the Government wishes to admit the entirety of the facts.

Notably, Defendant, both in his pleadings and at the motion hearing on August 23, 2024, has never denied killing M.I. Rather, Defendant is advancing a self-defense claim. This admission by Defendant obviates the need for the Government to admit Defendant's statement to J.B. and calls into question the necessity of the admission. The Government's assertion that Defendant did not use the words "self-defense" in his statement to J.B is evidence that he did not, in fact, act in self-defense, while novel, simply does not reflect the Court's belief that it was a reasonable inference. That is to say, the Court is not persuaded that in this situation a criminal defendant would have added the words "self-defense" to the statement.

The danger of admitting uncharged criminal conduct is great and the Court finds that the probative value is substantially outweighed by the danger of unfair prejudice. If this evidence were to be admitted, the jury would be presented with evidence that Defendant has engaged in criminal conduct unrelated to the crimes charged. The probative value here is slight in comparison. Accordingly, the Government's motion for admission of (q) is DENIED.

    (r)  October 9, 2023: Defendant confronted J.B. at a store and said he would just shoot J.B. to get this over with. When J.B. approached a vehicle in which Defendant was sitting at Defendant's request, Defendant reached for a baseball bat. (Docket No. 68 at 18).

The Government contends this evidence is admissible as consciousness of guilt/witness intimidation evidence given Defendant's earlier admission to J.B. *Id.* The Government also asserts this evidence may be admissible during cross-examination, redirect, or in rebuttal, for example, if Defendant elicits testimony that he was peaceful. *Id.*

Even assuming *arguendo* this evidence is offered for a proper purpose, the Court finds the probative value is substantially outweighed by the danger of unfair prejudice. The actions in (r), if admitted, would force Defendant to offer that the statements were made not in response to the death of M.I, but rather because of a dispute over a car. This evidence is speculative and without admission of the facts and circumstances regarding the vehicle sale and previous statement, both of which the Court has found should not be admitted, the uncharged criminal threat would only serve to confuse or misled the jury. Thus, the Government's motion to admit (r) is DENIED.

    (s)  October 9, 2023: Defendant put a sign on his property stating "GOOD-BYE" to intimidate neighbor and witness K.W. and/or A.M. *Id.*

The Government contends this evidence is admissible as consciousness of guilt/witness intimidation evidence. *Id.* The Government also asserts this evidence may be admissible during

cross-examination, redirect, or in rebuttal, for example, if Defendant elicits testimony that he was peaceful or depending upon Defendant's examination of K.W. and/or A.M. *Id.*

This evidence is speculative and without more context it does not appear to be relevant. As such, there is substantial danger of unfair prejudice outweighing any probative value. Without more context, the evidence would simply confuse and mislead the jury. The Government's motion to admit (s) is DENIED.

(t) On October 15, 2023, Defendant grabbed A.M. by the arm, threatened to slit her throat, said he should have blown off her head (when he killed M.I.), and followed her as she tried to escape through a field. She told law enforcement that Defendant was trying to intimidate her as she was scheduled to testify against him in the tribal homicide case. According to T.M., Defendant had his arm around A.M.'s neck or upper chest and appeared to be forcing her to go with him. According to T.O., Defendant was chasing A.M. and forcing her to go with him and said he would kill A.M. and T.O. just like he killed M.I. According to M.W., he heard A.M. state that Defendant tried to cut her throat and heard Defendant state something akin to "you're coming with me." (Docket No. 68 at 18-19).

The Government asserts five bases for admitting this evidence: (1) as an admission by a party-opponent under Fed. R. Evid. 801; (2) as consciousness of guilt/witness intimidation evidence; (3) as intrinsic evidence that shows the relationship between Defendant and A.M.; (4) if extrinsic, under Rule 404(b) to show that Defendant was acting with jealousy and hatred when he killed M.I., given his statement, and to show his motive, intent, plan, knowledge, absence of mistake, and lack of accident in killing M.I.; and (5) during cross-examination, redirect, or in rebuttal, for example, if Defendant elicits testimony that he was peaceful, attacks M.I.'s reputation,

or elicits testimony about specific instances of conduct by M.I. for the purpose of showing that Defendant was fearful of M.I. or upon Defendant's examination of A.M. *Id.* at 19.

The Court finds this evidence is intrinsic. Although it is highly prejudicial, the Government contends that A.M. will testify Defendant's actions in (t) were done to prevent her from testifying against him. These actions are inextricably intertwined with the crimes charged. The trier of fact could surmise Defendant performed these actions to eliminate a witness. Even assuming *arguendo* the evidence is not intrinsic, it satisfies the Rule 404(b) analysis for admission. The evidence is offered for a proper purpose in that it tends to show Defendant's motive to murder M.I. stemmed from his desire to control A.M., and it shows Defendant's plan was to kill M.I and eliminate A.M. as a witness. Because it tends to prove both motive and plan, it is highly relevant. While the danger of unfair prejudice is great, the probative value is significant because elimination of a witness is probative of guilt. A limiting instruction can advise the jury on how to apply the evidence. Therefore, the Government's request for admission of (t) is GRANTED.

(u) October 2023: Defendant accused A.M. of sleeping with T.M. and T.O. Defendant threatened T.O. often. Once, T.O. was at Defendant's trailer when Defendant accused him of sleeping with A.M., grabbed a shotgun, and asked T.O. to leave. (Docket No. 68 at 19).

The Government asserts four bases for admitting this evidence: (1) as consciousness of guilt/witness intimidation evidence; (2) as intrinsic evidence that shows the relationship between Defendant and A.M.; (3) if extrinsic, under Rule 404(b) to show that Defendant, even months after the homicide, was still jealous about A.M., that Defendant was acting with jealousy and hatred when he killed M.I., and to show his motive, intent, absence of mistake, and lack of accident in killing M.I.; and (4) during cross-examination, redirect, or in rebuttal, for example, if Defendant

19

elicits testimony that he was peaceful, attacks M.I.'s reputation, or elicits testimony about specific instances of conduct by M.I. for the purpose of showing that Defendant was fearful of M.I. or upon Defendant's examination of T.O. *Id.* at 19-20.

The Government's own motion offers evidence that these actions are indicative of Defendant's jealousy rather than consciousness of guilt or an attempt to intimidate witness T.O. *Id.* at 19. Because these actions evince both Defendant's jealousy of A.M.'s relationships with others and his possessiveness of A.M., such evidence is intrinsic to the crimes charged. Additionally, this evidence is admissible under Fed. R. Evid. 404(b). It is offered for a proper purpose in that it shows Defendant's motive for killing of M.I. was jealousy and possessiveness of A.M. Such evidence also conceivably shows a common scheme or plan, or a signature. When confronted with a situation of jealousy regarding A.M., Defendant, as part of a modus operandi turns to a shotgun. The evidence is highly relevant because it tends to prove Defendant was acting out of jealousy and possessiveness when he killed M.I., rather than self-defense. While the danger of unfair prejudice is present, the probative value is significant, and it cannot be said that unfair prejudice is substantially outweighed by the danger. Finally, a limiting instruction can adequately advise the jury of what value they can and cannot give this evidence. Accordingly, the Government's' request for admission of (u) is GRANTED.

(v) Defendant and M.I. used to pilfer property and sell it online to make money for drugs. M.I. felt Defendant was not giving him his share of the money and they butted heads. *Id.* at 20.

The Government contends that this is intrinsic evidence about the relationship between Defendant and M.I. and that they once trusted each other enough to engage in criminal activity together.

The Court finds that this evidence of an uncharged crime is not intrinsic to the crimes charged. It is not directly connected to the factual circumstances of the crimes, nor does it provide contextual or background information to the jury. At the motion hearing on August 23. 2024, the Government clarified that this is evidence of the relationship between Defendant and M.I. before Defendant began seeing A.M. and shows that Defendant and M.I. were friendly enough to engage in crimes together. However, the Government's own motion also indicates there were issues between Defendant and M.I. because they "butted heads" over money. Moreover, a friendship between two individuals, does not preclude one of them from acting in self-defense against the other. Additionally, even assuming this is intrinsic evidence, its probative value is substantially outweighed by the danger of unfair prejudice and confusing the issues for the jury. The Government's motion seeking to admit (v) is DENIED.

(w) Neighbor K.W. could smell meth coming from Defendant's home and there was so much drug traffic at Defendant's trailer that there were drive-thru and pickup signs. (Docket No. 68 at 20).

The Government states this evidence corroborates evidence that Defendant gave A.M. drugs and alcohol in exchange for her being with him and will show the bias of certain witnesses who acquired drugs from Defendant and/or used with him at his home. *Id.* The Government further asserts this may also be admissible during cross-examination, redirect, or in rebuttal, for example, if Defendant elicits testimony that he had the cameras because he was fearful of M.I. instead of to protect his drugs. *Id.*

Approaching intrinsic evidence cautiously, as it must, the Court finds that this evidence does not support the Government's argument that Defendant's drug manufacturing and sales is intrinsic to the charged crimes. Plainly, nothing in the evidence demonstrates that Defendant's

drug manufacturing and sales is directly connected to the factual circumstances of the charged conduct and, therefore, Defendant's drug manufacturing and sales is not intrinsic evidence. The Government's assertion that the evidence shows bias of "certain" witnesses, whom the Government does not identify, creates a back door to introducing evidence of Defendant's drug manufacturing and sales. As such, it will most certainly create an emotional response from the jury. This type of evidence is precisely the sort of evidence Rule 403 was designed to protect from admission. The Court thus finds the probative value of the evidence is substantially outweighed by its prejudicial effect and the admission of (w) is therefore DENIED.

> (x) Defendant's home was a regular place for people to use drugs. Defendant even engaged in a hand-to-hand drug transaction outside his front door within less than two hours of the homicide. (Docket No. 68 at 20).

The Government argues this evidence corroborates evidence that Defendant gave A.M. drugs and alcohol in exchange for her being with him and will show the bias of certain witnesses who acquired drugs from Defendant and/or used with him at his home. Additionally, the Government argues this evidence may also be admissible during cross-examination, redirect, or in rebuttal, for example, if Defendant elicits testimony that he had the cameras because he was fearful of M.I. instead of to protect his drugs. *Id.*

While this evidence may be corroborative in nature to A.M.'s assertions that Defendant gave her drugs or that Defendant did not have the cameras because he was afraid of M.I., but rather to protect his drugs, the Court finds that this uncharged criminal conduct is substantially outweighed by its prejudicial effect. Therefore, the Government's motion to admit (x) is DENIED.

(y) Defendant gave drugs and alcohol to A.M., an addict, which was the incentive for A.M. to be with Defendant. This reciprocal behavior continued after the homicide. (Docket No. 68 at 21).

The Government asserts two bases for admitting this evidence: (1) as intrinsic evidence about the relationship between Defendant and A.M.; and (2) during cross-examination, redirect, or in rebuttal, for example, depending upon Defendant's examination. *Id*.

The Court agrees that evidence of drug use by witness A.M. at the hands of the Defendant fits squarely within the ambit of intrinsic evidence. This evidence provides a rationale for an otherwise puzzling relationship between Defendant and A.M. and fits within the government's theory of the case. A limiting instruction will cure any potential risk of prejudicial effect. Therefore, the court finds that the Government's request to admit (y) is GRANTED.

## CONCLUSION

For all the foregoing reasons, the Court GRANTS the Government's Motion to admit the evidence labeled as (e), (g), (h), (i), (t), (u), and (y) and DENIES the Government's motion to admit the remaining evidence it seeks to admit in its motion.

DATED this 4th day of September, 2024.

D. EDWARD SNOW
UNITED STATES MAGISTRATE JUDGE